STATE OF NEBRASKA, APPELLEE, v. LITTLE ART CORPORA-
TION, A CORPORATION, APPELLANT.

215 N. W. 2d 853

Filed March 14, 1974.   No. 38542.

Walter J. Matejka, Arthur Schwartz, and Frank Slaninger, for appellant.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and RONIN and HASTINGS, District Judges.

NEWTON, J.

This matter requires a construction of the Nebraska obscenity statutes. In the case of State v. Little Art Corp., 189 Neb. 681, 204 N. W. 2d 574, we sustained the conviction of defendant on a charge of publicly showing obscene moving picture films. On appeal to the United States Supreme Court the cause was remanded for a construction of the Nebraska statutes in the light of Miller v. California, 413 U. S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419, and other recent decisions. See Little Art Corp. v. State of Nebraska, 414 U. S. 992, 94 S. Ct. 345, 38 L. Ed. 2d 231. The United States Supreme Court has required a similar construction of statutes in sev-

eral other states by the state courts concerned.

In Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498, the court sustained a conviction under a federal statute punishing the mailing of "obscene, lewd, lascivious, or filthy * * *" materials. The court stated: "Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '* * * (T)he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' United States v. Petrillo, 332 U. S. 1, 7-8. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '* * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *.'"

In United States v. 12 200-Ft. Reels of Film, 413 U. S. 123, 93 S. Ct. 2665, 37 L. Ed. 2d 500 (1973), the court, in footnote 7, refers to the language of the federal statute and states: "We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes where 'a serious doubt of constitutionality is raised' and 'a construction of the statute is fairly possible by which the question may be avoided.' United States v. Thirty-seven Photographs, 402 U. S. 363, 369 (1971) (opinion of White, J.), quoting from Crowell v. Benson, 285 U. S. 22, 62 (1932). If and when such a 'serious doubt' is raised as to the vague-

ness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 U. S. C. § 1305 (a) and 18 U. S. C. § 1462, see United States v. Orito, post, at 140 n. 1, we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in Miller v. California, ante, at 25. See United States v. Thirty-seven-Photographs, supra, at 369-374 (opinion of White, J.). Of course, Congress could always define other specific 'hard-core' conduct."

In Miller v. California, *supra,* it was held in relation to obscene materials: "\* \* \* we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or *authoritatively construed.*" (Emphasis supplied.) It further states: "The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, Kois v. Wisconsin, supra, at 230, quoting Roth v. United States, supra, at 489, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. \* \* \*

"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

In United States v. One Reel of Film, 481 F. 2d 206 (1st Cir., 1973), and United States v. Thevis, 484 F. 2d 1149 (5th Cir., 1973), the courts construed federal statutes in the light of footnote 7 of United States v. 12 200-Ft. Reels of Film, *supra*, and held the language used to be sufficiently specific.

The Nebraska statute, section 28-921, R. S. Supp., 1972, forbids the circulation or publication of "any obscene, lewd, indecent, or lascivious" material. Defendant asserts that this language is overbroad and not sufficiently specific to comply with the requirements of Miller and other recent cases. In so doing, footnote 7 of United States v. 12 200-Ft. Reels of Film, *supra*, is ignored by defendant. He likewise ignores section 28-926.07, R. R. S. 1943, which provides that in criminal proceedings brought under section 28-921, "the standard for judging obscenity to be applied as a guide by finders of fact in considering the evidence is whether to the average person the dominant theme of said material or conduct which is at issue in such civil action or criminal proceedings, taken as a whole, appeals to the prurient interest, which is to excite lustful thoughts, or a shameful or morbid interest in nudity, sex, or excretion which goes substantially beyond the customary limits of candor."

Section 28-926.07, R. R. S. 1943, effectively narrows the standard of obscenity contained in section 28-921, R. S. Supp., 1972. The word prurient in its application to obscenity means "tending to excite lasciviousness" and lasciviousness means the presence or arousal of sexual desire. Similarly applied to obscenity the word lustful refers to sexual desire. Insofar as the phrase "a shameful or morbid interest in nudity, sex, or excretion which goes substantially beyond the customary

limits of candor" is concerned, it will be noted that Miller v. California, *supra*, uses substantially the same language in defining permissible statutory standards in the examples therein set forth.

We find that the Nebraska statutes fully comply with the requirements of Miller v. California, *supra*, and other related cases. We further find that in once more affirming the conviction of defendant, no retroactive application of the law is involved. At the time of the violation by defendant our statutes were in full force and effect. Their meaning and purport were clear. We have not given them a new or different construction but have simply affirmed and called attention to their clear meaning and intent.

We reaffirm our holding in the former opinion rendered in this case.

AFFIRMED.

McCOWN, J., dissenting.

The majority opinion treats Miller v. California, 413 U. S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419, as though it authorized state courts to construe state statutes designed to regulate obscenity by simply rewriting them to comply with the state court's interpretation of the requirements of Miller. That view not only transforms the court into a legislature, but also ignores the emphasis on specificity so frequently reiterated in Miller.

The Supreme Court stated in Miller: "State *statutes* designed to regulate obscene materials must be carefully limited. * * * As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be *specifically defined by the applicable state law*, as written or authoritatively construed."

In laying down the constitutional tests, the court specified: "(b) whether the work depicts or describes, in a patently offensive way, sexual conduct *specifically defined by the applicable state law*, and * * *. We

emphasize that it is not our function to propose regulatory schemes for the States. That must await their *concrete legislative efforts.* * * * Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard-core' sexual conduct *specifically defined by the regulating state law,* as written or construed." (Emphasis ours.)

It must be obvious that the Nebraska statutes do not meet the guidelines and standards set forth in Miller v. California, *supra.* It is equally obvious that the majority opinion does not construe the Nebraska statute when it says the words of the Nebraska statute are now rewritten to say what Miller requires it to say. I respectfully dissent and suggest that the recent action of the Supreme Courts in Iowa and Louisiana upon the identical issues ought to point the course for this court also.

In State v. Wedelstedt, 213 N. W. 2d 652 (Iowa, Dec. 19, 1973), the Iowa court said: "It is urged we construe the statute to include perhaps the suggested specific examples stated in Miller to eliminate vagueness and to somehow adopt the average-person criterion.

"This would require adding to and striking legislative provisions of the statute. Well-established rules of statutory construction prohibit our doing so. No court under the guise of construction may extend, enlarge, or otherwise change the terms and meaning of a statute. * * *

"It is not our function to rewrite the statute. * * * If changes in the law are desirable from a policy, administrative, or practical standpoint, it is for the legislature to enact them, not for the court to incorporate them by interpretation."

In State v. Shreveport News Agency, Inc., 287 So. 2d 464 (La., Dec. 3, 1973), the Louisiana Supreme Court

454

said: "We are not of the opinion that we are endowed with the constitutional authority to re-draft Louisiana's obscenity statute. Our Court may interpret a statute, but it cannot re-write a statute in order to hold it constitutional. * * * Our statute is totally lacking in specificity which would comply with the requirements of Miller v. California. * * * We reject any theory that we can authoritatively construe our criminal statute regulating obscenity so as to make it constitutional under the United States Supreme Court holding in Miller v. California. It is for the legislature to design a statute or statutes which meet the tests and formulations set forth by that court."

It seems clear to me that the Nebraska statutes on obscenity, in the light of Miller v. California, *supra,* are vague and general, as well as overbroad, and lack the required specificity to withstand constitutional attack under the First and Fourteenth Amendments. It is an added source of difficulty that the "construction" of the Nebraska statutes now made by this court is simply applied retroactively to this case, where the challenged offense occurred long before the current "construction." The fact that the films here might well have been obscene under virtually any valid statute cannot breathe constitutional life into an otherwise invalid statute. That fact only emphasizes the difficulties inherent in the judicial assumption of legislative responsibility in the difficult field of obscenity. In my opinion, section 28-921, R. S. Supp., 1972, is clearly unconstitutional in the light of Miller v. California, 413 U. S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419.

CLINTON, J., dissenting.

I cannot agree with the majority opinion for reasons wholly unrelated to the issue of the First Amendment and obscenity. The judgment of conviction in this case was vacated and the cause remanded for further consideration in the light of Miller v. California, 413 U.

S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419, and other recent decisions of the United States Supreme Court.

Among other requirements, Miller holds that in order to be immune from constitutional infirmity the prohibited material must depict or describe "sexual conduct *specifically defined* by the applicable state law." (Emphasis supplied.) The court then gives the following examples of such specific definition:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

Our present statute is without question inclusive of the specific descriptions and is broad enough to include the exhibition of the thoroughly foul films on which this prosecution was founded. I cannot agree with Judge McCown's conclusion that the present statute is vague. No contention can reasonably be made that the defendant did not have notice that the films it displayed were prohibited by existing Nebraska law.

The problem presented by the vacation by the Supreme Court of the United States of our decision affirming the judgment of conviction in this case arises because if we are to comply with the Miller standards requiring specificity or description in the statute, we cannot, as Judge McCown correctly notes, merely construe our statute, we must rewrite it. If we are to do that then we violate the principle of separation of powers of our own Constitution by a completely unwarranted intrusion into the legislative domain. We have said many times in somewhat varying language that: "A court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes." Bessey v. Board of Educational Lands & Funds, 185 Neb. 801, 178 N. W. 2d 794.

It is far more important that we adhere to our own salutary principles of statutory construction, which are a recognition of the fundamental constitutional doctrine of separation of powers, than that we defend the police power of the state by arbitrarily restricting the operation of the general words of our present statute. The preservation of the principle is far more important than whether the defendant pays a fine, the deterrent effect of which will be slight. The remedy, of course, is legislation, state and municipal, which describes with the specificity required by Miller the matters which the Legislature wishes to prohibit. That is for the legislative branch to determine and not for us.

Let not my position be misunderstood. I deplore what I believe to be the unwise intrusion by the Supreme Court of the United States into the areas historically within the police powers of the state. The protection of constitutional rights and the police power of the state are opposite sides of the same legal coin. The problem of the courts in matters such as this always has been and always will be the balancing of interests protected by the Constitution and the necessities of protecting the common good through the exercise of the police power. In the matter of obscenity, which as the United States Supreme Court has always said is not protected by the First Amendment, that court has, in my judgment, gotten the tension out of balance. But in this particular case we must live with that maladjustment because under the supremacy clause of the Constitution of the United States we are bound to observe the mandate of the Supreme Court which vacated the judgment herein.

The statute is unconstitutional under Miller for overbreadth. We cannot remedy that overbreadth short of rewriting it. That we cannot do if we are to keep faith with the doctrine of separation of powers and our own long-followed principles of statutory construction. The

majority opinion seems to believe that we have received an apparent invitation from the Supreme Court of the United States to "authoritatively construe" the statute to make it constitutional. Such an "invitation" if that is what it is, cannot and ought not extend our admitted power to construe statutes to the point of rewriting them.

I would add a caveat to those who read the majority opinion. Do not rely on it as a general precedent in the matter of statutory construction.